IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MICHELLE SNYDER, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:04-CV-175 (DF) |
| | : | |
| THE CITY OF CENTERVILLE, | : | |
| GEORGIA, | : | |
| | : | |
| | : | |
| Defendant. | : | |

# O R D E R

## I.    INTRODUCTION

Plaintiff Michelle Snyder ("Plaintiff") instituted this action alleging Defendant City of Centerville ("Defendant" or "City") sexually discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2005).  Plaintiff also asserts state law claims for: (1) intentional infliction of emotional distress; (2) defamation; and (3) false-light invasion of privacy.  Before this Court is Defendant's Motion for Summary Judgment (doc. 29).

To date, Plaintiff has not filed a Response to Defendant's Motion for Summary Judgment. Nonetheless, after a thorough review of the record, and the relevant case law and statutes, the Court hereby concludes that Defendants are entitled to summary judgment on all of Plaintiff's federal claims.

## II.    STANDARD OF REVIEW

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (West 2005); *see also Celotex Corp.*, 477 U.S. at 322. A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson*

2

*Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Maynard v. Williams*, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). "If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  The district court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

## III.    FACTUAL BACKGROUND

Plaintiff Michelle Snyder ("Plaintiff") began working for the City of Centerville Police Department ("City" or "Defendant") in 1992. When she began her employment with the City, Plaintiff was given a copy of the City's Conflict of Interest Policy.  (Ex. O to Pardo Decl., doc. 38, at ¶ 20.)  This policy provided that "[n]o relative should be employed in positions where their [sic] family interests could conflict with the interest of the City of Centerville." (Policy, Ex. 5 to Sullivan Dep., at 6.)  The policy further provides that "[r]elatives of employees in positions that carry any degree of supervision shall not be employed anywhere in the department in which the supervisor works, but may be employed in other departments of the city."  (Policy 6.) Most notably, the policy's definition of "relative" includes "persons who are common law married or who are living together without the benefit of matrimony."  (Policy 6.)

While employed with the City, Plaintiff served as Administrative Assistant to Chief of Police Michael Sullivan ("Sullivan"), and supervised a staff of three women.  (Pl. Dep., doc.  39, at 43-45.)  Aside from supervising and training these women, Plaintiff's administrative duties included "completing personnel records for the Police Department, maintaining training records, scheduling training schools for employees, assisting Sullivan with preparing the budget and drafting the internal operating procedures for the Police Department, and maintaining the Police Department's financial accounts."  (Def.'s Br. Supp. Mot. Summ. J., doc. 30, at 2.; Pl. Dep. 44-45; 60-61.)

In 1993, Sullivan sent Plaintiff to police academy.  (Pl. Dep. 36.)  In January 1994, Plaintiff received her Georgia Peace Officers Standards and Training Council ("P.O.S.T.") certification.  (Pl. Dep. 36.)  Following her P.O.S.T. certification, Plaintiff maintained her full-time administrative position, but also began working part-time as a police officer.  (Compl., doc. 1, at ¶ 11.)

In an effort to cut costs associated with overtime pay, the City Council often directed Sullivan to utilize part-time reserve officers instead of full-time officers whenever possible.  (Fowler Decl., doc. 34, at ¶¶ 9-10.)  This directive increased the demand for Plaintiff's part-time services, which raised some concern among

5

members of the City Council and Police Department that Plaintiff's "part-time and overtime patrol work would interfere with her full-time administrative duties." (Fowler Decl., doc. 34, at ¶¶ 11-12; Pardo Decl., doc. 38, at ¶ 21; Coley Decl., doc. 33, at ¶ 3.)

In July 2001, Sullivan promoted Plaintiff to Lieutenant/Administrative Assistant. (Pl. Dep. 59.) The rank of lieutenant gave Plaintiff a supervisory role over not only the administrative staff, but also Bailiffs Jim Gibson and Vernon Wells. (Admin. Hr'g Tr., doc. 50, at 557.) Plaintiff also received frequent pay increases throughout her employment with the City. (Pl. Dep. 68.)

In September 2001, the City hired Darryl Bittick as an officer. (Bittick Dep., doc. 42, at 25.) Plaintiff and Bittick developed a friendship while working together on the weekends. (Pl. Dep. 172.) This friendship eventually evolved into a sexual relationship. (Wright Dep., doc. 47, at 58-59; 67-69; Admin. Hr'g Tr. 260, 264, 267.) In October 2002, Plaintiff disclosed her relationship with Bittick (her sexual "partner-to-be") to her physician, Dr. Alison Wright. (Wright Dep. 58-59.)

On October 31, 2002, Bittick was arrested while on duty for obstructing an officer. (Bittick Dep. 13-14.) After this incident, Sullivan placed Bittick on administrative duty. (Bittick Dep. 50.) While Bittick was in the administrative

office, he was under Plaintiff's supervision.  (Bittick Dep. 50.)  At this point, Plaintiff "became closer to [Bittick]."  (Pl. Dep. 172-73.)  Plaintiff and Bittick took a number of out-of-town trips together.  (Pl. Dep. 82, 88, 182-83.)  These trips were both personal and work-related in nature.

As Plaintiff's relationship with Bittick progressed, Plaintiff disclosed the romantic relationship to several individuals, including Dr. Wright (Ex. 3 to Wright Dep., at 63.) and Sara Bowden ("Bowden"), her subordinate (Admin. Hr'g Tr. 260, 262-64).[1]

At some point in early 2003, Chief Sullivan "indicated that he would retire within the upcoming year."  (Pl. Compl. ¶ 20.)  Plaintiff was allegedly "in line for consideration to succeed the Chief of Police."  (Pl. Compl. ¶ 20.)  In late 2003, however, Assistant Chief of Police Ernie Pardo "was made Acting Chief of Police by the Mayor and Council."  (Pardo Decl. ¶ 3.)  Pardo "was officially appointed and sworn in as the Centerville Police Chief" on January 7, 2004.  (Pardo Decl. ¶ 3.)

On March 24, 2003, Plaintiff obtained permission from Sullivan to rent a room in her home to Bittick.  Shortly thereafter, Bittick moved into Plaintiff's home.

---

[1] Contrary to the testimony of Bowden and Wright, and other probative evidence in the record, Plaintiff claimed in her deposition that her relationship with Bittick did not become romantic until December 2003.  (Pl. Dep. 149.)

Because Plaintiff claimed that Bittick was merely renting a room from her, Sullivan did not believe the arrangement violated any of the City's policies.  (Sullivan Dep. 119-20.)

In April 2003, Councilman Walker Fowler received an anonymous communication with a seven-page letter enclosed.  (Pardo Decl. ¶ 6.)  The content of the letter indicated that it was from Plaintiff to Bittick, and revealed that Plaintiff and Bittick likely were romantically involved.[2]  (Ltr., Ex. 8 to Pl. Dep.)  On May 28, 2003, Plaintiff met with a group of city officials to discuss whether or not her living arrangement with Bittick violated the City's conflict-of-interest policy.  (Admin. Hr'g Tr. 559-60.)  During the meeting, Plaintiff admitted that she had written Bittick a letter and included it in a birthday card.  (Admin. Hr'g Tr. 559.)  Plaintiff claimed, however, that the letter presented to her at the meeting contained only "bits and pieces" of the letter she wrote to Bittick.  (Admin. Hr'g Tr. 559.)  Plaintiff further asserted that her relationship with Bittick was not sexual.  (Admin. Hr'g Tr. 559-60.)

On May 30, 2003, city officials questioned Bittick about the letter.  (Bittick Dep. 82.)  Bittick claimed the letter was a "farce," and that he only recognized "parts of

---

[2] In the letter Bittick allegedly received, Plaintiff supposedly wrote, among other things, "[t]he passion, trust, love, romance, fun and friendship we share blows me away.  You are full of love and full of surprises . . . I just can't keep my hands off of you . . . I love to kiss you. . . ."  (Ltr., Ex. 8 to Pl. Dep., doc. 41.)

it." (Bittick Dep. 85.)

During an informal investigation conducted by Pardo, the acting chief of police, it was learned that Sergeant Sid Andrews sent the anonymous communication to Councilman Fowler after he found the letter on Plaintiff's work computer. (Pardo Decl. ¶ 6.; Admin. Hr'g Tr. 20-21.) Pardo informed the Mayor and City Council of this development, and the Council told Pardo to suspend Bittick and Plaintiff for "conduct unbecoming" pending an internal investigation. (Pardo Decl. ¶ 7.) Plaintiff was suspended without pay on June 4, 2003. (Pardo Decl. ¶ 7.) Bittick was simultaneously suspended. (Pardo Decl. ¶ 7.) During the investigation, the Georgia Bureau of Investigation retrieved "a substantial portion of the letter from Plaintiff's computer." (Pardo Decl. ¶ 9.) With this information in hand, Pardo ordered Plaintiff to submit to a polygraph examination. (Pardo Decl. ¶ 9.) After reviewing the examination questions, Plaintiff refused to submit to the actual polygraph examination. (Woodruff Dep., doc. 46, at 37.)

On June 19, 2003, Pardo informed Plaintiff in writing of her proposed termination "for, among other reasons, violating the conflict-of-interest policy and refusing to submit to a polygraph examination." (Pardo Decl. ¶ 10; Ltr., Ex. G to Pardo Decl. ) At the end of July, the City held an administrative hearing and allowed

9

Plaintiff to challenge her proposed termination.  (Pl. Dep. 255; *see also* Admin. Hr'g

Tr.)  Following the hearing, the administrative judge concluded that Plaintiff and

Bittick should be terminated.  (Pardo Decl. ¶ 10; Judgment, Ex. H to Pardo Decl.)

The Mayor and Council upheld the judge's decision to terminate Bittick and

Plaintiff.  (Pardo Decl. ¶ 11.)

## IV.    LEGAL DISCUSSION

### A.  Title VII Claims

The allegations outlined in Plaintiff's Complaint are based solely on

circumstantial evidence.[3]   Discrimination claims supported by circumstantial

evidence are treated under the familiar burden-shifting framework established by

the Supreme Court in ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792 (1973).

Under that framework, the plaintiff bears the initial burden of establishing the

elements of a prima facie case of discrimination.  The plaintiff's burden at this stage

is not onerous.  Once the plaintiff has made out a prima facie case, an inference of

discriminatory intent is created, and the burden then shifts to the defendant-

employer to come forward with one or more legitimate, non-discriminatory reasons

---

[3] Circumstantial evidence is evidence that "*suggests*—but does not prove—a discriminatory motive."  ***Burrell v. Bd. of Trustees of Ga. Military College***, 125 F.3d 1390, 1393-94 (11th Cir. 1997).

to justify its employment action.  The defendant-employer's burden is one of production, not persuasion.  Finally, "[i]f the employer meets this burden of production, the plaintiff then must establish that each of the defendant's proffered reasons for [the employment action] is pretextual." *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1104 (11th Cir. 2001).

### 1. Plaintiff's Claim of Discriminatory Suspension

Plaintiff asserts "Defendant's true reason for suspending [her] was to avoid considering her for the promotion to Chief of Police because of [her] sex."  (Compl., doc. 1, at ¶ 22.)  To establish the prima facie elements of a Title VII suspension claim based on sex discrimination, a plaintiff must prove: (1) she belongs to a protected class; (2) she was subjected to an adverse job action; (3) she was qualified to do the job; and (4) her employer treated similarly situated employees outside her classification more favorably.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera v. Orange Cty Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)

11

(internal citations omitted).  "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed."  *Id.* (citation omitted).  "In order to satisfy the similar-offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'"  *Id.* (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)).

Plaintiff has not carried her prima facie burden.  While it is clear that Plaintiff has established the first three elements of a prima facie case, Plaintiff has not established that Defendant treated "similarly situated" male employees more favorably.

In her deposition, Plaintiff alleged that Defendant did not discipline or terminate several of her fellow male employees who engaged in "conduct unbecoming."   For example, Plaintiff contends that Dallas Perry had sexual intercourse while on duty, that Mike Mullins was arrested for domestic violence, and that Terry Wright was arrested for stalking.  (Pl. Dep., doc. 39, at 128, 129, 133.)

The conduct alleged above is not "sufficiently similar" to Plaintiff's alleged conduct in this case.  Plaintiff allegedly had an improper relationship with a co-

12

worker in violation of the City's conflict-of-interest policy.  This alleged behavior is quite different from an officer engaging in public indecency, or being arrested for domestic violence or stalking.  In fact, the only male employee whose conduct was sufficiently similar to Plaintiff's alleged conduct was Bittick (Plaintiff's alleged paramour), and Bittick was also suspended.  (Def.'s Br. Supp. Mot. Summ. J., doc. 30, at 19 n. 18.)

Even assuming that the foregoing conduct is "sufficiently similar" to Plaintiff's conduct, there is no evidence that these male employees were given more favorable treatment than Plaintiff was given.  Just as Plaintiff was suspended due to allegations of "conduct unbecoming," Wright and Mullins also were suspended until the criminal charges against them were disposed of in their favor.  (Def.'s Br. Supp. Mot. Summ. J., doc. 30, at 12.)   As for Perry, there is no evidence to substantiate Plaintiff's claim that he engaged in sexual intercourse while on duty. Even if Perry did have intercourse while on duty, there is no evidence to suggest that Plaintiff's supervisors knew that he had done so.  (Def.'s Br. Supp. Mot. Summ. J. 12; Pardo Decl. ¶ 18.) Thus, Plaintiff's supervisors had no legitimate basis for disciplining Perry.  In sum, the Court finds that this claim fails due to Plaintiff's inability to establish a prima facie case of discriminatory suspension.

### 2. Plaintiff's Claim of Discriminatory Discharge

Plaintiff also claims that Defendant's decision to discharge her was made based on her sex, in violation of Title VII. (Compl., doc. 1, at 7.) To establish a prima facie case of discriminatory discharge, Plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for the position held; (3) she was terminated; and (4) she was replaced by a person outside the protected class. ***Coutu v. Martin County Bd. of County Comm'rs***, 47 F.3d 1068, 1073 (11th Cir. 1995).

Plaintiff has established the first three criteria for a prima facie case of discriminatory discharge. What Plaintiff cannot establish, however, is that she was replaced by a person outside her protected class. *See* ***Wehunt v. R.W. Page Corp.***, 352 F. Supp. 2d 1342, 1353 (M.D. Ga. 2004). Plaintiff was replaced by Sara Bowden, a female. (Bowden Decl. ¶ 6.) Thus, because Plaintiff cannot establish a prima facie case of discriminatory discharge, this claim fails.

### 3. Plaintiff's Claim of Discriminatory Pay

Plaintiff alleges Defendant sexually discriminated against her because she was paid less than her male counterparts, Lieutenant Ron Coley and Assistant Chief Ernie Pardo. (Compl., doc. 1, at ¶ 16.; Pl. Dep. 70, 74.)

14

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation . . . because of such individual's . . . sex." 42 U.S.C.A. § 2000e–2(a)(1). "In this circuit, individual disparate-pay claims brought under Title VII are governed by" the *McDonnell-Douglas* burden-shifting framework. *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1185 (11th Cir. 2005). Under the *McDonnell-Douglas* approach, "a female Title VII plaintiff establishes a prima facie case of sex discrimination by showing that she occupies a job similar to that of higher paid males." *Id.*

Here, too, Plaintiff's claim fails because Plaintiff cannot establish a prima facie case of sex discrimination to support her disparate-pay claim. Even assuming Plaintiff's allegations about being paid less than Pardo and Coley are true, Plaintiff did not occupy a job sufficiently similar to either man. Lieutenant Coley was an investigator, and while there was some overlap between the duties performed by Plaintiff and Coley, Plaintiff acknowledged that her position was different from Coley's position. (Pl. Dep. 71.) It is similarly undisputed that the duties related to Plaintiff's position were different from the duties associated with Assistant Chief Pardo's position. (Sullivan Dep. 85.) Thus, because Plaintiff cannot establish a prima facie case of disparate pay based on sex discrimination, this claim fails.

### 4. Plaintiff's Claim of Disparate Treatment Sexual Discrimination

Plaintiff claims that Defendant treated her differently from her fellow male employees because of her sex.  Specifically, Plaintiff alleges that "Councilman Walker Fowler refused to pay [her] for working a shift as a police officer, and he voided her paycheck and asked that it be reissued to show different work although [she] had performed police duties."[4]  (Compl., doc. 1, at ¶ 13.)  Plaintiff also alleges that she had to obtain special permission to ride in a patrol car —before and after attending police academy—while her fellow (male) officers did not have to obtain such permission.  (Pl. Dep. 37.)  Plaintiff also claims that, in the 1990s, she had to get permission from the Mayor to wear a uniform even though she was a police officer.  (Pl. Dep. 54.)  Plaintiff further alleges that before she became Lieutenant in 2001, Chief of Police Michael Sullivan told her that "the City of Centerville [C]ouncil did not want a female police officer."  (Pl. Dep. 76.)  The council members also allegedly told Chief Sullivan that Plaintiff could not work a shift by herself because she was a woman.  (Pl. Dep. 234.)

Defendant asserts Plaintiff's disparate-treatment claim should be dismissed because the aforementioned allegations "occurred more than 180 days before she

---

[4] This event allegedly occurred in 1994.  (Fowler Dep. 13.)

filed her charge [of discrimination]."   (Def.'s Br. Supp. Mot. Summ. J. 22.)
Alternatively, Defendant argues this claim should be dismissed because Plaintiff
cannot succeed under the ***McDonnell-Douglas*** burden-shifting framework.

### a. Untimeliness of Plaintiff's Claims

Defendant asserts Plaintiff's disparate-treatment claim should be dismissed
because Plaintiff did not file a timely charge of discrimination with the Equal
Employment Opportunity Commission ("EEOC").[5]   Before bringing a Title VII
action in federal court, a plaintiff must file a charge of discrimination with the EEOC
within <u>180 days</u> after the alleged unlawful employment practice occurred.   42
U.S.C.A. § 2000e–5(e) (West 2005).   A plaintiff must receive statutory notice from the
EEOC of her right to sue the respondent named in the charge before she can file her
complaint in federal court.   ***Forehand v. Fla. St. Hosp. at Chattahoochee***, 89 F.3d
1562, 1567 (11th Cir. 1996).   "[I]f, after the expiration of 180 days, the charge has not
been dismissed and no other action has been taken by the EEOC, the EEOC is
required to notify the claimant and that claimant may bring suit in district court
within 90 days thereafter."   ***Id.*** (citing 42 U.S.C.A. § 2000e–5(f)).

---

[5] Defendant does not allege Plaintiff's claims of discriminatory suspension, discriminatory
discharge, discriminatory pay or retaliation were untimely filed.

17

Plaintiff filed her charge of discrimination with the EEOC on or about December 29, 2003.  (Ex. 14 to Pl. Dep., doc 41.)  For Plaintiff's charges to be considered timely, the above acts of discrimination that she complained of must have occurred within the six months preceding the charge.  Based on when Plaintiff's complaints regarding: (1) Councilman Fowler's adjustment of her paycheck; (2) her uniform restrictions; and (3) the City Council's alleged treatment of her transpired, the Court concludes that these allegations are time-barred under 42 U.S.C.A. § 2000e–5(e).  The Court will, however, examine Plaintiff's allegation that she alone had to obtain permission to ride in a patrol car under the *McDonnell-Douglas* framework to the extent that she alleges the complained-of act occurred within the 180-day limit imposed by 42 U.S.C.A. § 2000e–5(e), or was a "continuing violation" of Title VII.  *See **Nat'l R.R. Passenger Corp. v. Morgan**,* 536 U.S. 101, 114-15 (2002).

### b. *McDonnell-Douglas* **Analysis: Prima Facie Case**

To demonstrate a prima facie case of disparate treatment based on sex discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male

employees.  *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

With respect to the third prong, an "adverse employment action" is one that results

in a "serious and material change in the terms, conditions, or privileges of

employment."  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir.

2001).  "Moreover, the employee's subjective view of the significance and adversity

of the employer's action is not controlling; the employment action must be

materially adverse as viewed by a reasonable person in the circumstances."  *Id.*

Plaintiff has not established a prima facie case of disparate treatment.  While

there can be little dispute that Plaintiff can prove the first two elements of a prima

facie case, Plaintiff did not suffer an "adverse employment action."  Even assuming

that Plaintiff was the only officer required to obtain permission to ride in a patrol

car, and that her claim is not time-barred, the Court cannot conclude that Plaintiff's

treatment resulted in a "serious material change in the terms, conditions, or

privileges of [her] employment."  As the Eleventh Circuit noted in *Davis*, "the

protections of Title VII simply do not extend to 'everything that makes an employee

unhappy.'" *Davis*, 245 F.3d at 1242 (quoting *Robinson v. City of Pittsburgh*, 120

F.3d 1286, 1300 (3d. Cir. 1997).  Because Plaintiff has failed to establish a prima facie

case of disparate treatment, this claim also fails.

19

### 5. Plaintiff's Claim of Retaliation

In addition to prohibiting employers from discriminating on the basis of sex,

Title VII makes it unlawful:

> for an employer to discriminate against any of his employees . . .
> because he has opposed any practice made an unlawful employment
> practice by this subchapter [of Title VII], or because he has made a
> charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter [of Title
> VII].

42 U.S.C.A. § 2000e–3(a).  Individual retaliatory-discharge claims brought under

Title VII are governed by the *McDonnell-Douglas* burden-shifting framework.  *See*

*Holifield*, 115 F.3d at 1566.  To establish a prima facie case of retaliation, a plaintiff

must demonstrate that: (1) she engaged in protected activity; (2) she suffered an

adverse employment action; and (3) there was a causal link between her protected

activity and the adverse employment action.  *Bass v. Bd. of County Comm'rs,*

*Orange County, Fla.*, 256 F.3d 1095, 1117 (11th Cir. 2001).  With respect to the third

prong, the Supreme Court has observed that "the cases that accept mere temporal

proximity between an employer's knowledge of protected activity and an adverse

employment action as sufficient evidence of causality to establish a prima facie case

uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch.*

20

*Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)(quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001))(internal citations omitted).

Plaintiff alleges that Defendant's decision to terminate her was in retaliation for her prior complaints of discrimination, and that a "causal connection exists between Plaintiff's protected activity of reporting the discrimination and the termination of her employment. . . ."   (Compl., doc. 1, ¶¶ 37, 38.)  Specifically, Plaintiff alleges that she complained to Mayor Keene and Mayor Weigand about discrimination within the police department.  Defendant argues that, even if Plaintiff did so complain, there is no causal link between her complaints and her termination.

Maurice Keene served as Mayor of Centerville from December 1987 until January 1998.  (Pardo Decl. ¶ 23.)   Mary Ann Weigand served as Mayor of Centerville from January 1998 until June 2003.  (Pardo Decl. ¶ 23.)  Plaintiff did not file her EEOC charge until December 2003.  Because the Court has no evidence of causality before it—other than Plaintiff's alleged complaint(s) of discrimination made sometime between 1987 and 2003—the Court finds that there was not sufficient temporal proximity between Plaintiff's alleged complaints and her termination to establish causality.  Therefore, the Court finds Plaintiff has failed to establish a prima facie case of retaliation, and this claim fails.

**B. Plaintiff's Claims for Intentional Infliction of Emotional Distress, Defamation and False-Light Invasion of Privacy**

In addition to her Title VII claims, Plaintiff asserts state-law claims for: (1) intentional infliction of emotional distress; (2) defamation; and (3) false-light invasion of privacy.  (Compl., doc. 1, ¶¶ 41, 42.)

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C.A. § 1331 (West 2005). District courts have supplemental jurisdiction over all other claims, including state-law claims, that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C.A. § 1367(a) West 2005.  A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ."  28 U.S.C.A. § 1367(c) (West 2005).  When deciding whether to exercise supplemental jurisdiction over a state-law claim, a district court should consider, among other factors, "judicial economy, convenience, fairness and comity."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) (noting "the argument for dismissing state law claims in order to allow state courts

to resolve issues of state law is even stronger when the federal law claims have been dismissed prior to trial").

Considering the nature of Plaintiff's state-law claims, her failure to fully prosecute this action, and the stage at which her Title VII claims have been dismissed, the Court finds the above-listed factors counsel against retaining supplemental jurisdiction over her state-law claims. Accordingly, Plaintiff's state-law claims are dismissed without prejudice.

## V.    CONCLUSION

Based on the relevant law and the arguments considered by the Court and set forth above, the Court hereby DECLARES:

1.    Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claims for: (1) discriminatory suspension; (2) discriminatory discharge; (3) discriminatory pay; (4) disparate treatment; and (5) retaliation is hereby **GRANTED**.

2.    Plaintiff's state-law claims for: (1) intentional infliction of emotional distress; (2) defamation; and (3) false-light invasion of privacy are hereby **DISMISSED WITHOUT PREJUDICE.**

SO ORDERED, this 14th day of February, 2006.

**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/jab